UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| SAM QUIAH,<br><br>Plaintiff,<br><br>vs.<br><br>M2127, Minnehaha County Jail Director of Nursing; JOHN/JANE DOES, Minnehaha County Jail Staff,<br><br>Defendant. | 4:26-CV-04074-ECS<br><br>OPINION AND ORDER SCREENING PLAINTIFF'S AMENDED COMPLAINT UNDER § 1915A |

Plaintiff Sam Quiah filed a pro se prisoner civil rights lawsuit under 42 U.S.C. § 1983 while he was incarcerated at the Minnehaha County Jail.[1] Doc. 1 at 1; Doc. 2 at 1. The Court granted Quiah's motion for leave to proceed in forma pauperis and screened his complaint pursuant to 28 U.S.C. § 1915A. Doc. 9. But because Quiah named only the Minnehaha County Jail as a defendant, an entity not amenable to suit under § 1983, this Court dismissed his claim without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Id. at 7–8. The Court, however, delayed in entering judgment for thirty days to provide Quiah with the opportunity to file an amended complaint naming a defendant amenable to suit. Id. at 8–9. Quiah filed an amended complaint, Doc. 10, which this Court now screens.

[1] Quiah later informed the Court that he had been transferred to the Rapid City Minimum Unit. Doc. 11 at 1. See also Offender Locator, S.D. Dep't of Corrs., https://docadultlookup.sd.gov/adult/lookup/details/ (last visited Oct. 5, 2026).

## I. 1915A Screening

### A. Factual Background as Alleged by Quiah

In its order screening Quiah's original complaint, the Court informed Quiah that an amended complaint replaces an original complaint and "renders the original complaint without legal effect." In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 928 (8th Cir. 2005) (citing In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000)); see Doc. 9 at 7–8. The Court also cautioned Quiah that any claim he wished to bring, against all defendants he intended to name, must be included in an amended complaint, along with the supporting factual allegations. See Doc. 9 at 7–8. Quiah filed a three-page amended complaint, Doc. 10, providing the following facts.

Quiah names as defendants M2127, the Director of Nursing at the Minnehaha County Jail, as well as unnamed "staff of the jail" (Minnehaha Jail Staff). Doc. 10 at 1. Quiah alleges that these defendants are the "one's [sic] liable for damages in this suit[]" because "under there [sic] care [he] was provided absolutely no treatment in regards to [his] injury involving [his] back." Id. Quiah alleges that he was "lied to" because he was informed "that nothing was wrong with [him]" even though the "numerous X-rays" taken while he was in the custody of the Minnehaha County Jail show otherwise. Id.

When Quiah's injury was "finally admitted as a bulging disc in [his] spine[,]" Quiah alleges that "nothing else was done to remedy or treat it." Id. at 1–2. Quiah claims that "[t]hey raised the dosage of [his] Naproxen to absolutely no avail[,]" and that his requests for extra mattresses were denied. Id. at 2. "When [Quiah] asked for [f]urther treatment, the staff refused, even though they knew the seriousness of the injury." Id. Quiah claims that while in the

Minnehaha County Jail's custody, he was "entitled to medical treatment, especially in regards to an injury [he] sustained while in their custody." Id.

As relief, Quiah seeks $500,000 in damages "for this gross negligence and misconduct carried out by the jail staff, medical personnel and most of all, the Director of Nursing of Minnehaha County Jail, named 'M2127[.]'" Id. at 2–3. As this Court understands his complaint, Quiah also requests that his co-payments for medical visits be waived.[2] Id. at 3.

Quiah does not specify whether he sues defendants in their individual or official capacities, or both. See Doc. 10. When a plaintiff does not specifically state in which capacity he sues the defendants, the Court must apply the course of proceedings test. S.A.A. v. Geisler, 127 F.4th 1133, 1138 (8th Cir. 2025) (en banc). "[T]he fundamental question is whether the course of proceedings has put the defendant 'on notice that she was being sued in her individual capacity' and that 'her personal liability was at stake.'" Id. at 1139 (quoting Daskalea v. D.C., 227 F.3d 433, 448 (D.C. Cir. 2000)). "[T]he underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." Id. (quoting Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995)). "Relevant factors include, but are not limited to, how early in the litigation the plaintiff first specified individual capacity claims, whether the plaintiff's complaint included a prayer for punitive damages, and whether the defendant declined to raise a qualified immunity defense." Id. The United States Court of Appeals for the Eighth Circuit noted that "[o]ur sister circuits can offer helpful guidance." Id. Other circuits have considered factors such as the nature of the plaintiff's claims and whether the complaint alleges that defendant acted in accordance with a government policy or custom. Goodwin v. Summit

[2] To the extent that Quiah intended for his request to waive fees to constitute a second motion for leave to proceed in forma pauperis, this motion is denied as moot because this Court previously granted Quiah's motion for leave to proceed in forma pauperis and informed him that although he must pay the entire fee under the Prison Litigation Reform Act, he may do so through an installment plan because he is proceeding in forma pauperis. Doc. 9 at 1–3.

Cnty., 703 F. App'x 379, 382 (6th Cir. 2017); Briggs, 66 F.3d at 61. "[N]o single factor is dispositive in an assessment of the course of proceedings." S.A.A., 127 F.4th at 1140 (quoting Powell v. Alexander, 391 F.3d 1, 22 (1st Cir. 2004)). For the sake of completeness, and for purposes of screening, this Court liberally construes Quiah's complaint to allege claims against the defendants in both their individual and official capacities.

**B. Legal Standard**

The Court's previous screening order sets forth the applicable legal standard for screening complaints under § 1915A. Doc. 9 at 6–7. The Court will apply this same standard when screening Quiah's amended complaint.

**C. Legal Analysis**

Liberally construing his amended complaint, Quiah brings an Eighth Amendment[3] deliberate indifference to serious medical needs claim against defendants in both their individual and official capacities.[4] Doc. 10. But even with the liberal construction provided to pro se

[3] As this Court noted in its original screening order, Doc. 9, in the event that Quiah was a pretrial detainee at the time the conduct alleged in his complaint occurred, his deliberate indifference claims would be analyzed under the Fourteenth Amendment's due process protections, rather than the Eighth Amendment. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam). Because the Eighth Circuit has not established a different standard for this analysis, deliberate indifference claims under the Fourteenth Amendment may be examined under the same deliberate indifference standard as Eighth Amendment claims by convicted inmates. Id. at 152–53.

[4] "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). Therefore, Quiah's claim against M2127 and the Minnehaha Jail Staff in their official capacities is equivalent to a claim against Minnehaha County. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Instead, a county "can only be held liable for the unconstitutional acts of its employees under § 1983 'when those acts implement or execute an unconstitutional policy or custom of the [political] subdivision.'" Marquez v. Peterson, No. 5:24-CV-05041-KES, 2025 WL 815208, at *4 (D.S.D. Mar. 13, 2025) (quoting Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999)). This Court foregoes a discussion on whether Quiah has alleged the existence of a policy or custom, because, as this Court describes below, Quiah fails to allege a constitutional violation. Without an underlying constitutional violation, "there can be no § 1983 or Monell liability[.]" Whitney v. City of St. Louis, 887 F.3d 857, 861 (8th Cir. 2018) (citation omitted). As for Quiah's individual capacity claims, "[p]ersonal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." Hafer v. Melo, 502 U.S. 21, 25 (1991). "[T]he plaintiff in a personal-capacity suit need not establish a connection to governmental 'policy or custom,'" like the plaintiff must in an official capacity suit. Id. (citation omitted).

complaints, Quiah has failed to state a plausible claim for relief in his amended complaint. "The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." Topchian v. JP Morgan Chase Bank, N.A., 760 F.3d 843, 848 (8th Cir. 2014) (citation modified). Here, Quiah states that under the care of M2127 and "staff of the jail[,]" he was "provided absolutely no treatment" related to his back injury.[5] Doc. 10 at 1. But Quiah provides no facts alleging how each defendant was personally involved in the constitutional violation Quiah alleges. See generally id.; see also Krych v. Hvass, 83 F. App'x 854, 855 (8th Cir. 2003) (per curiam) (providing that a plaintiff "failed to state any claim whatsoever against [defendants] because he merely listed these individuals as defendants in his complaint and did not allege they were personally involved in the constitutional violations."). "A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." Tatone v. SunTrust Mortg., Inc., 857 F. Supp. 2d 821, 831 (D. Minn. 2012).

In other words, the pleading standard set out in the Federal Rules of Civil Procedure "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Although pro se complaints are to be construed liberally, "they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912,

[5] Quiah provides contradictory statements in his original and amended complaints, as well as within the amended complaint itself. See Docs. 1, 10. While Quiah states in his amended complaint that he "was provided absolutely no treatment[,]" he also states that he received "numerous X-rays" and was given Naproxen for pain management. Doc. 10 at 1–2.

914 (8th Cir. 2004). And a complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (2009) (citation modified).

But even if this Court were to construe the facts and allegations in Quiah's initial complaint along with those in his amended complaint, his deliberate indifference claim would still fail to state a claim upon which relief may be granted. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Est. of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995)).

The deliberate indifference standard includes both an objective and subjective component. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Id. (citing Coleman, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is

so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Coleman, 114 F.3d at 784 (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Even assuming for purposes of screening that Quiah alleged the existence of a serious medical need, he fails to show that the defendants demonstrated deliberate indifference. See Docs. 1, 7, 8, 10. To establish deliberate indifference, "[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Kulkay v. Roy, 847 F.3d 637, 643 (8th Cir. 2017) (quoting Est. of Rosenberg, 56 F.3d at 37). "Grossly incompetent or inadequate care can constitute deliberate indifference but the care provided must be so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." Dulany, 132 F.3d at 1242 (quotation omitted). Here, Quiah provides medical records showing that after jail staff were made aware of his back pain, he received multiple x-rays[6] and various medications to alleviate his pain. See Doc. 8-1 at 1–4, 5–6, 10–12. At a sick call visit on December 22, 2025, Quiah was prescribed with Prednisone, Flexeril, and Naproxen to treat his muscle spasms. Id. at

[6] While an x-ray taken in July of 2025 showed "anterior wedging of L1 vertebral body and disc space narrowing at L4-L5[,]" Doc. 8-1 at 10, a report from an x-ray in December of 2025 provides that results were normal, id. at 3. See also id. at 12 (providing that x-rays were "normal"). A radiology report from an x-ray taken on March 27, 2026, noted that there was "[s]traightening of the lumbar spine. This could be due to muscle spasm, ligamentous injury, or simply positional." Id. at 2. The report advised that Quiah receive a "CT or MRI if clinical ambiguity remains." Id. A report from an x-ray taken on April 14, 2026, noted that there was "[n]o acute osseous abnormality[,]" and recommended a CT or MRI if symptoms persisted. Id. at 1.

12. Quiah was seen again on March 27, 2026, where he was again started on Prednisone and Flexeril for muscle spasms. Id. at 10.[7]

By his own allegations, Quiah describes this conduct as "gross negligence[,]" Doc. 10 at 2, which is insufficient to show deliberate indifference. Dulany, 132 F.3d at 1242 (quotation omitted). Instead, "[t]he level of culpability required to demonstrate deliberate indifference on the part of prison officials is equal to criminal recklessness." Danztler v. Baldwin, 133 F.4th 833, 843 (8th Cir. 2025) (citation omitted). Here, Quiah provides no facts that the defendants' conduct rose to a level of criminal recklessness, or that the care provided to him was "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." Dulany, 132 F.3d at 1242 (quotation omitted).

Further, the crux of Quiah's claim appears to be that he disagrees with his course of treatment and believes that he has been misdiagnosed. See Doc. 1 at 4, 7 (stating that he was "not given the proper treatment" and that he seeks relief for the "mistreatment" and "misdiagnos[is]" he has received); Doc. 7 at 1 (alleging that he was not provided with what he believed to be "appropriate evaluation and treatment"); Doc. 10 at 2 (providing that he was not provided with his requested treatment). Quiah alleges that he was "not provided with further diagnostic testing, specialist evaluation, physical therapy, or other treatment directed at identifying and addressing the cause of [his] pain."[8] Doc. 10 at 2. But "inmates have no constitutional right to receive a particular or requested course of treatment, and [prison medical professionals and nurses] remain free to exercise [their] independent medical judgment."

[7] At sick call visits on November 26, 2025, and February 12, 2026, Quiah informed the provider that he wanted to "avoid medications[.]" Doc. 8-1 at 11, 12.

[8] In the medical records Quiah provides, the notes from his sick call visits on two occasions provide that Quiah did "not want additional medications . . . and is primarily seeking clarification on the cause of his pain." Doc. 8-1 at 12. See also id. at 11 ("[p]atient prefers to avoid medications and requests evaluation to determine the cause of the pain.").

Cannon v. Dehner, 112 F.4th 580, 587, 589 (8th Cir. 2024) (citation omitted). See also Meuir v. Greene Cnty. Jail Emps., 487 F.3d 1115, 1118–19 (8th Cir. 2007) (recognizing that disagreement with a course of treatment does not constitute deliberate indifference (citation omitted)).

Quiah further asserts that "[b]ecause [he] was not provided with what [he] believe[s] was appropriate evaluation and treatment while incarcerated, [he is] concerned that [his] condition may have worsened or progressed without proper medical care." Doc. 7 at 1. He alleges that he "was not given the opportunity to receive treatment that may have addressed the underlying cause of [his] condition." Id. But again, "mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Phillips v. Jasper Cnty. Jail, 437 F.3d 791, 795 (8th Cir. 2006) (quoting Est. of Rosenberg, 56 F.3d at 795). And "[t]he existence of a possible alternate course of treatment, which 'may or may not' have been successful, is not sufficient to raise an inference of deliberate indifference where the prison officials acted reasonably but ultimately failed to avert the harm." Dulany, 132 F.3d at 1241. As for Quiah's claim that he was misdiagnosed, see Doc. 1 at 7, "disagreement with [a medical professional's] diagnosis, or lack thereof, does not establish a deliberate indifference claim." De Rossitte v. Correct Care Sols., LLC, 22 F.4th 796, 803 (8th Cir. 2022).

Therefore, Quiah's Eighth Amendment deliberate indifference claim against M2127, the Director of Nursing at the Minnehaha County Jail, as well as unnamed Minnehaha County Jail staff, in both their individual and official capacities, is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## II. Conclusion

It is therefore ORDERED:

1. That Quiah's Eighth Amendment deliberate indifference claim against M2127, the Director of Nursing at the Minnehaha County Jail, as well as unnamed Minnehaha County Jail staff, in both their individual and official capacities, is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

DATED October 8, 2026.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE